George J. Franken v. Commissioner.
Franken v. Commissioner
Docket No. 23575.
United States Tax Court
1951 Tax Ct. Memo LEXIS 232; 10 T.C.M. (CCH) 441; T.C.M. (RIA) 51140; May 14, 1951
*232 L. F. Loux, Esq., for the petitioner. William R. Bagby, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined a deficiency in income tax of $4,427.22 and a fraud penalty of $2,213.61, for the calendar year 1945. The issues to be decided are whether petitioner received unreported income in 1945 in the amount of $10,122.01 as determined by respondent and whether respondent erred in the determination of the 50 per cent fraud penalty pursuant to section 293 of the Internal Revenue Code. Findings of Fact Petitioner is an individual who resided in Youngstown, Ohio during 1945. For about eighteen years petitioner has been superintendent of plant protection at a steel company in Youngstown and in addition to that employment has also owned and operated a business known as Shamrock Grill, a tavern, since 1939. Petitioner during the taxable year devoted most of his time to the steel company job and spent only odd hours at the tavern which was under the full management and control of his brother Fred. The Shamrock Grill was located in a business section of Youngstown, had two main bars *233 and a service bar in the night club division. In 1945 from eight to thirteen persons were regularly employed in the Grill including bartenders, barmaids, and waitresses. Music wah furnished by a Hammond organ, and a private policeman was employed to keep order. Approximately eighty-five per cent of the sales at the Grill were sales of liquor, wine, and beer. Food, tobacco, and other items made up the rest. The tavern had three cash registers, each having keys for liquor, beer, wine, food, cigarettes, and miscellaneous income, and each of which cash registers upon clearing emitted a tape with a grand total and with a subtotal for each of the keyed items, such as a total for liquor, beer, wine, cigarettes, food, and miscellaneous income. The records of the tavern consisted of: (1) a daily tally sheet with a column heading for and setting forth the total daily sales of each of the following: Liquor, beer and wine, cigarettes, food, miscellaneous income, and other income; (2) a cash receipts journal, which consisted of a columnar breakdown of the sales items identical with the tally sheet, namely, liquor, beer and wine, cigarettes, food, miscellaneous, and other income, and into which *234 was recorded each day's total sales of each of these items; (3) a disbursements journal; and (4) a general ledger. All books and records were kept at the Shamrock Grill. The books and records of the tavern were normally maintained by Fred Franken, L. W. Huffman, an accountant, and the petitioner, each having separate and distinct duties. Each day after closing hour, the three cash registers were usually cleared by Fred Franken. Whenever he was not there, his brother Rudolph cleared them. The resulting daily subtotals for each of the sale items were entered by Fred Franken into the tally sheet, under the respective column headings. He deposited each day's receipts in the Shamrock Grill's bank account on the following business day. The petitioner's normal sole duty with respect to keeping the books was that once a month he transferred each day's total sales of liquor, beer and wine, cigarettes, food, miscellaneous income, and other income from the daily tally sheets to the same headings of the cash receipts journal. The duties of the accountant with respect to the keeping of the books consisted of the monthly posting of the totals or footings from the cash receipts journal and *235 the disbursements journal to the general ledger, and the keeping of the general ledger and the preparation of all financial statements and tax returns. The accountant devised the plan of the tally sheet used by the tavern and prepared and headed up the cash receipts journal with the breakdown of columns and headings for each item of sale, and instructed the petitioner and Fred Franken on how to make the entries in the tally sheet and cash receipts journal, respectively. At no time during 1945, however, did the accountant post the totals of the daily tally sheets to the cash receipts journal and he made no entries in either the tally sheets or the cash receipts journal and he had nothing to do with their maintenance. The accountant had been employed for the tavern by Fred Franken in 1940 and had performed his required duties for ten years as of October 4, 1950. He was the only accountant to work on the books. And, although he was the only one to make entries in the general ledger, he never kept personal possession of any of the books and records of the tavern. For the months of January to August 1945, inclusive, except for a few totals in June, the accountant totalled, in the *236 cash receipts journal, each of the columns for liquor, beer and wine, food, cigarettes, miscellaneous income, and other income. This totalling was done during 1945 soon after the close of each respective month. For the months of September to December 1945, inclusive, the petitioner totalled, in the cash receipts journal, the columns for liquor, beer and wine, food, cigarettes, miscellaneous income, and other income. This totalling was done during 1945 soon after the close of each respective month. For his original postings from the cash receipts journal to the general ledger, for the months of September to December 1945, inclusive, the accountant did not verify the petitioner's additions, but accepted them as correct. This accorded with the accountant's past practice when posting from the cash receipts journal to the general ledger, of accepting as correct the petitioner's entries, footings, and totals in the cash receipts journal without checking or verification of petitioner's additions and without any verification of petitioner's entries with the tally sheets or cash register tapes. In his 1945 return petitioner reported total receipts of $98,418.16 from the Shamrock Grill *237 and a net profit of $3,571.74. In 1948 a revenue agent investigated petitioner's 1945 return. As a result of his examination of the books and records of the Shamrock Grill an understatement of sales was developed by the agent in the following months and amounts: SALES
Understate-
Month
Reported
Corrected
ment
January
$ 6,035.63
$ 6,035.63
February
6,510.19
6,510.19
March
7,407.86
7,407.86
April
7,449.90
7,449.90
May
8,382.84
8,382.84
June
9,347.81
9,347.81
July
9,659.77
9,983.20
$ 323.43
August
9,853.21
9,853.21
September
8,428.29
10,119.67
1,691.38
October
9,026.25
10,612.47
1,586.22
November
9,526.73
11,187.38
1,660.65
December
7,656.98
12,520.31
4,863.33
$99,285.46
$109,410.47
$10,125.01
Error in General Ledger: Total of sales
3.00
$10,122.01
On the basis of this report the Commissioner increased petitioner's taxable income by $10,122.01 and determined a deficiency of $4,427.22 in income tax and a 50 per cent penalty of $2,213.61. The wages subject to Social Security tax reported by the petitioner for the tavern during the four quarters of 1945, are as follows: Date Quarter Ended
Amount
3-31-45
$ 3,866.46
6-30-45
4,419.07
9-30-45
5,683.15
12-31-45
6,400.25
TOTAL
$20,368.93
*238 The total wages reported by petitioner for the tavern for 1945 was $24,493.93, so that the Shamrock Grill, therefore, paid as wages the amount of $4,125 not subject to Social Security. The monthly admission tax or cabaret tax paid by the petitioner for the tavern for 1945, was as follows: Month
Tax
January
$ 83.06
February
92.68
March
101.68
April
86.47
May
91.73
June
127.98
July
96.90
August
102.84
September
139.99
October
112.92
November
126.71
December
165.47
A week or so before the hearing petitioner's counsel requested the accountant, L. W. Huffman, to recheck the records of the Shamrock Grill. This was done by checking the figures from cash register tapes to tally sheets and then preparing a new cash receipts journal. Huffman found a number of errors in addition which totalled $173 more than reported in the petitioner's return. In compiling this new cash receipts journal the auditor used data placed in his possession by petitioner and his brother Fred. The cash register tapes and daily tally sheets were found to be missing for one day in July, three days in September, twelve days in October, twenty-one days in November, and for the *239 entire month of December. For those days the auditor used the figures on the cash receipts register prepared by petitioner and accepted them without further verification. Petitioner has not proved that respondent erred in adding to the income reported on his return for 1945 the amount of $10,122.01. No part of the deficiency for the year 1945 was due to fraud with intent to evade tax. Opinion The questions here are entirely factual. The burden of proving the deficiency assessment erroneous was on the petitioner. We do not think it has been carried. The petitioner introduced evidence tending to describe his method of keeping books and to prove that his records accurately reflected his income. But, for the very months in controversy, the months where the revenue agent had found an understatement of sales, the cash register tapes and daily tally sheets which would have constituted the most forceful proof of the true sales were missing and could not be produced. Furthermore, and again with attention directed to the months in dispute, (September, October, November, and December), it is to be noted that petitioner's figures show some falling off in sales, especially in December, *240 whereas, the wages paid during that quarter were the highest of the year and the cabaret taxes paid were also higher than the average for the rest of the year, indicating that business could not have been so poor during those months as petitioner would have us believe. These things considerably weaken petitioner's proof and force us to conclude that petitioner has not met his burden of proving respondent's action erroneous. Our finding of fact on the fraud issue disposes of that issue. Respondent contends that some of the records produced by petitioner at the trial were deliberately falsified, but we do not find in this record that clear and convincing proof necessary to sustain the assessment of the fifty per cent fraud penalty. Respondent has not borne his burden on this issue. Decision will be entered under Rule 50.